and 24-2365 Western Missouri, Nathan Rinne v. Camden County, et al. Ms. Stewart, if you are prepared, please proceed. Thank you. Good morning. This matter comes before the court based on a proper interlocutory appeal of the District Court's denial of both qualified and absolute immunity pursuant to 28 U.S.C. 1291 to Defendants Williams and Defendant Hasty. And the court also has de novo review over both the denial of qualified and absolute immunity as well as the pendent jurisdiction of the denial of summary judgment based on the issue of punitive damages because punitive damages in this case is intertwined with a decision on qualified immunity and qualified immunity would bar a claim for punitive damages. The jurisdiction of this court is proper to determine whether there were actually any material facts in contention and whether Defendants Williams and Hasty are entitled to qualified immunity because they did not violate a clearly established constitutional right. Just briefly, on September 29, 2020, the Camden County Commission voted to adopt Resolution 09-29-20-01, which prohibits, among other things, disruptive, violent, or aggressive behavior, harassment, physical threats of any kind, and assaults. The resolution also provides authority to the commission to ban any individual that causes disruptive conduct, presents an unsafe environment to patrons, taxpayers, or employees. Following the resolution on March 2, 2021, the Camden County Commission met in a closed session to address multiple employees' complaints to the commission about the plaintiff and his conduct and his harassing behavior. In considering those complaints of employees and, in particular, employees who had voiced concerns to the commission that the commission was tasked with and was obligated to provide them with a safe work environment, the commission then consulted the county attorney, Mr. Charles MacLeay, who advised the commission that there was authority under the resolution to ban individuals who violated the resolution. The commission voted 2-0, with one abstention, to ban plaintiff from county property for one year based on his conduct. Now, Defendant Williams voted in favor of the ban because he received complaints about the plaintiff from... Isn't there, I mean, the whole issue, though, is factual dispute. I mean, that's what the district court found here. I mean, aren't these facts viewed from your client's perspective that are in dispute or put in dispute by the plaintiff in this case? And how do you respond to that specifically? Because the district court said, maybe, maybe not, send it to the jury. So, thank you for asking, because exactly the next point I was going to make is that the district court didn't identify any material issues of fact. What was material on the issue of whether qualified immunity applied in this 1983 act? Well, isn't the motivation of the defendant's material here, whether it was motivated in part by protected First Amendment conduct? I mean, the district court maybe didn't say that, but based on your argument here, these were the proffered reasons for the ban. And counsel's saying these are not the legitimate reasons for the ban. That is facially material to your claim. That's why you raised it in your argument, right? I mean. It is, but there's no material issue of disputed fact. So, the dispute may be that the plaintiff denies the actions that he did or that he engaged in this conduct. But the material fact that is not in dispute that goes directly to qualified immunity is what the commissioners knew and why they took action. So, what they knew were these complaints were being brought to them. Whether a defendant or the plaintiff denies engaging in that activity is not a material issue of fact. It may be disputed, but it doesn't go to the materiality of whether qualified immunity applies. The district court also relied directly on plaintiff's allegations and did not identify the materially contested facts that demonstrated that the vote to ban, on advice of counsel, pursuant to the resolution. So, if the allegations were that this person was disruptive, made incendiary remarks, that's disputed, right? That is disputed by the plaintiff as to whether or not he engaged in that conduct to a point. Again, the district court did not identify whether that evidence, which was contested, was properly put before the court. So, the facts were not supported. In the briefing, we put that. Well, if the basis for the action of the defendants was the legitimacy of the allegations against the plaintiff, that would seem to be quite material whether or not that was true. Not in the context of a qualified immunity dispute because the qualified immunity dispute goes to both prongs. So, the first and second prong vote have to be met by the plaintiff. And the district court did not determine whether there was a material disputed fact as to whether the reasonable commissioner, in the position of a Don Williams or Greg Hastie, whether they reasonably would be on notice that following the advice of their attorney and voting in favor of a ban against Mr. Rennie for a limited period of time, based on those complaints, was violative. Was there evidence admitted below from county employees that they had reported to the two named defendants about disruption? Yes. And that was obviously turned up during discovery. So, that wasn't in the record during the previous appeal. Is that right? That is correct. Also not in the previous appeal and why this court has jurisdiction is that Mr. Williams was not a party to the first appeal that this court heard on qualified immunity. And this court heard an appeal based on a denial of motion to dismiss standard on qualified immunity, not on a summary judgment standard, which are different standards of review. One, you assume that the plaintiff's facts are an allegation or allegations are true. So, I'm trying to catch up a little. I'm sorry. I'm slowing this. So, is part of your argument essentially, look, the commissioners here had testimony or had reports from employees that there was disruptive conduct. And whether or not there was disruptive conduct, they reasonably relied on those reports and based their decision based on that and, therefore, entitled to qualified immunity. Am I tracking there? Yes. Okay. And I, again, given two counsel, I apologize for not having ample time. I'd like to reserve a few minutes for rebuttal and I will hand it over to my co-counsel for Mr. Hastie, Chris Heigl. May it please this honorable court, I represent Greg Hastie, former county commissioner of Camden County. And I don't want to plow the same ground, but the judges hit on a fine point. There were complaints that weren't in the motion to dismiss record. There were some, some of them touched upon it, but the complaints to the county commissioners, which formulated the basis of them going to Charlie McEvoy, their county counselor, and asking them, can we do this to protect public safety? We're not in it to squelch or chill his first amendments because when you look back at the entire record, his first amendment rights were Mr. Rennie's first amendment rights. He also didn't offer an opinion on whether or not that, as I understand the record, counsel, or there's a dispute about the record, but the one view of the evidence is counsel simply said you have the authority under the resolution that you passed to take action. He didn't suggest, I believe it was a he, that it was appropriate in this case. Is that correct? Which person? The counsel did not advise the commissioners. Yes, he did. But the district court said that was in dispute, as I understand it. The only one that disputes that is Rennie, Mr. Rennie, who wasn't there. But, I mean, we don't have jurisdiction. If the district court found a factual dispute on that issue, this court does not have jurisdiction to second guess that. I'm sorry. Go ahead. The allegation of Mr. Rennie and the disagreement with the decision of the county commission is not, the disagreement itself is not a material fact that should enter into the qualified immunity analysis. Qualified immunity analysis comes in and says, well, it's important, all the judges have immunities in their public lives. The county commissioners should have these same immunities, too, because they're public servants, they're not attorneys, and they went to their county attorney. They don't have to go to, you'll probably hear the argument, well, there was not enough research done or not enough background check. The county commission doesn't go have to hire Dean Chemerinsky or Jonathan Turley. They hired a county attorney to advise them, and their attorney said, based on the threats to the public that you've perceived, you are authorized to issue this ban. Here, let me write this letter. Does Mr. Rennie dispute that fact, that that was the advice given by counsel to the commission? He can't. Does he? Yes, he disputes that, but he has no factual basis because he wasn't there, does not know when on that meeting. Well, what did counsel testify to? I'm sorry, what? Did counsel testify that that was the advice he gave?  He said, I would not counsel somebody to do something illegal that was a public threat, that they perceived, they asked me if I could do this. I said, yes, under the law. It's not a violation of the First Amendment. Here's the letter, and it's in the records, no doubt. Here's the letter that you, if you read it, it's okay, send it. And they took that letter, they read it, they sent it on behalf of the county commission. It's that Mr. Rennie's complaints and allegations don't matter because he wasn't there. That fact of the advice of counsel testified to by three government officials. But you're asking us to reverse a district court's fact finding. I'm sorry, what? You're asking us to reverse a district court's fact finding. Yes, Your Honor. It's not a fact that he found. His findings of fact are based on, well, plaintiff alleges. That doesn't get you over the factual hurdle that plaintiff is under. We have sworn facts. He has allegations and feelings which do not constitute a violation of the First Amendment. I thought the record shows that Attorney McElyai. McElyai. McElyai, I'll rely on you for that, said he gave, quote, no opinion about whether the facts in this case were sufficient to support this ban. Why isn't that enough right there to create the factual dispute that the district court latched on to? I think that's the cross-examination that Mr. Rennie's attorneys. That's evidence, right? That's admissible evidence.  But he also testified that based on the public threat that was caused by Rennie and his people, so to speak, primarily Rennie, the threats to the public employees, the threats to Don. You see, the problem I have here, we have, is we're arguing about facts. And that's the one thing we are not supposed to do here. But there's no dispute as to the material fact that Charlie McElyai, and if you read his full testimony that is supplied to the court, not just the cross-examination where he goes, yeah, I didn't do any additional research. He's not required. But I'm not talking about the research. I'm talking about I give no opinion about whether the facts in this case were sufficient to support the ban. I understand that may have been on cross-examination. But if I'm the district court judge, I look at that and I say, that's enough wiggle room from counsel saying, what happened here? And that's what goes to the jury. And the jury may agree with you. I realize that. And I have a feeling that they will, but we shouldn't be there. Because immunity is immunity from suit. And these, I don't want to say poor, these unfortunate public servants shouldn't be sued. Bottom line. Because they made a legislative decision and they also made a qualified immunity decision based on the advice of counsel. I mean, what were they supposed to do? Well, the legislative decision was to enact the resolution. It wasn't the ban. The ban wasn't really a... The ban letter was a legislative decision. The underlying basis was the ordinance. The actual decision to issue the ban letter, which was drafted by Charlie MacRae, which says, if this looks okay, send it on commission letterhead. And that decision, that vote, it wasn't Don Williams, her client. It wasn't Greg Hastie's, my client's, personal decision to say, Rennie is not allowed on county property. It was a legislative decision of the governmental body. It's not an individual decision. I would request that the court incorporate the full argument of my brief, because I don't have any further time. I appreciate the court's time. Thank you, Mr. Heigl.  Yes. I'm Kurt Tiedemann. I represent Nathan Rennie. You know, just by way of deep background, he is what you would call a political activist in Cameron County, Missouri. And he's particularly interested in the actions of the Camden County Commission. His comments were historically made on Facebook primarily, and he had a fairly large following on Facebook. In late 2020, he was generally critical of the County Commission, and he supported a candidate by the name of James Gohagan, who was a new face in Camden County politics. And he was a constant thorn, frankly, in the sides of Commissioner Williams and Hastie for that reason. On March 2nd, 2021, the commission on a two-to-one vote banned him from all county property, and he brought this suit alleging First and 14th Amendment violations. And as you, I'm sure, recall, we've been here before on an interlocutory appeal. This time, it's on a summary judgment, which was denied, on qualified immunity, absolute legislative immunity, and punitive damages. What does the record show, just to focus on what I'm wondering, about these threats and about what the two individual defendants knew? And is there a dispute about that? I mean, that seems to me, the district court found factual disputes. The question is raised. Those are immaterial. The material facts are undisputed. What's your response to that? About the threats? Yes. Okay. I can think of three. And let's keep in mind, first of all, too, that the letter of March 2nd, the ban, didn't talk about public safety. It talked about harassment, talked about disruption. Public safety was something that was kind of added on as an addendum once they got sued. But here are essentially the three points that they seemed to try to make. And by the way, these were mostly already obliterated at the time of the injunction hearing. And yet, counsel continues to cite these threats as though they're established fact. They are not only established fact. They are entirely bogus. Number one, that Nathan Rennie said that he was going to blow up a cell tower. Okay? This is a statement that Mr. Hastie and Mr. Williams attribute to James Gohagan, who is the third commissioner. He denies it, right? He completely denies it. And furthermore, Nathan Rennie denies it as well. So not only the source denies it, but the man himself denies it. It's completely bogus. The second threat is one that James Hastie claims that he received himself when he was there looking at and inspecting the MacLea building. He and some of the other supporters of Mr. Gohagan were outside of the county building after having inspected it. And Mr. Hastie, Commissioner Hastie, walks out. And Nathan Rennie says to him, is this structure new? That's the entirety of the conversation. There were other witnesses to it who were there. They say it wasn't threatening at all. He didn't approach him. He didn't walk up to him. So that's number two. That's threat number two. There were other people there who saw it. And only Mr. Hastie seems to think it's somehow threatening. The third so-called threat came from a gentleman by the name of Dean Duran. Dean Duran is one of the maintenance men who confronted James Gohagan the morning after the inspection of the building. Mr. Duran confronted James Gohagan when he was at his office. And he says, bring that Nathan Rennie guy down here. I want to talk to that Nathan Rennie guy. Okay? So Nathan Rennie, coincidentally, happens to be on the property later in the day. Duran confronts him. It's all on tape. The judge has seen the tape. Nathan Rennie did not threaten him in any way, shape, or form. In fact, Dean Duran confronted him. Is there any other evidence provided to the commissioners when they vote? On a threat? Yes. No. None. And these so-called complaints from other people, the only testimony we have on that is from the county attorney himself. And here's what he says. Well, it was very clear that none of the other employees wanted anything to do with having anything about their job posted on Facebook. That's not harassment. That's public comment. The Facebook posts were obviously discussed and provided in discovery. Were there any threats on the Facebook posts? No. None. You will find somewhere, and I think they tried to put it into their briefing, there is a campaign poster with Mr. Rennie. He was briefly a candidate for county commission. Very briefly. He appears with a gun in a picture. It's not a threat, and as we all know, politicians with guns in advertisements is no longer verboten. I mean, even virtually or even culturally not verboten. There are no threats. There is no evidence of any threat. The notion that that is an established fact is completely bogus. And while we're talking about facts, and on the record, I have to address this notion that somehow Nathan Rennie is relying on his own notion of what advice of counsel was given to the commission. The factual dispute doesn't come from anything Nathan Rennie said. It comes from the fact that the two commissioners' testimony does not agree with their counsel's testimony. So we took them through, and counsel said, Mr. MacLeay said, I told them there is this ordinance and that you can ban somebody if it's harassing, etc., but I haven't looked at any of the facts. You can do it if you look at the facts and they support it. That was his advice. That was his advice. The fact of the matter is they never could come up with anything to support it. They never did. They haven't until today. If there is any dispute at all as to what counsel's advice was, the dispute is whether he gave any advice at all on this topic. Counsel, would you address the legislative immunity? Would I address legislative immunity? I certainly will. And I think your question was right on the dot. The question, I mean, legislative immunity generally applies when a body, a governmental body, makes an enactment that is policy-driven. It's about policy. It applies prospectively and it helps the public determine their actions going forward. This action of this ban on Nathan Rinney has none of the characteristics of legislative immunity or legislation. It is a judgment on facts that are in the past, that have already happened, about one person and that one person's conduct. So nothing about this enactment or this ban falls even remotely within the category of legislative immunity or we refer to it sometimes as absolute immunity. And that's exactly what the court said. That's exactly what the district court said. The other thing is to the extent that there are any facts that need to be determined on that, those facts are in dispute too. And this leads me to the question of why are we really here? Why are we really here? We don't have any undisputed facts. They're all, I mean, I just wrote these down before I came here today. These facts come from the court's order on page four. Whether plaintiff's conduct, and I should say before I start going through these, the court set up that the central issue on page six, the central issue in this case is, quote, the basis for defendant's decision to ban the plaintiff. In other words, is it true that they really were trying to stop somebody from harassing people? Is that true? Do you believe that on the one hand? Or on the other hand, do you believe Nathan Rennie when he says that he is being made an example of for his speech? That's the central issue. With that as the central issue, here's what the court said about material facts on page three. The court finds that, quote, in the briefing on page four. Whether plaintiff's conduct violated the policy and constituted disruptive or unsafe conduct is a factual question. Also on page four. Whether that alleged conduct or plaintiff's opinions motivated the commission's enforcement action is also a question of fact. Also on page four. The timing and extent of Mr. MacLeay's legal advice and the role it played in the commission's action are also factual disputes. So, counsel, what's the recourse of the legislature, the legislative body, to protect itself and its future proceedings and the decorum of the future proceedings from threats or from threatening conduct? Exactly the ordinance that Ms. Stewart cited to you. That ordinance is not challenged. And so long as you're not making up bogus facts to submit in support of a ban under that ordinance, the ordinance is fine. I mean, we keep talking about this ordinance. It's a complete misdirection. Our case is not challenging the ordinance. Our case is challenging the ban of Nathan Rennie. I mean, they start with the ordinance and they talk about what advice they got about whether or not you can enter this ordinance. We're not challenging the ordinance. The fact of the matter is they didn't follow their own ordinance. They didn't have any facts suggesting that there was harassment. All they had was animus towards my client. You know, we started on the day that James Gohagan walked into office for the first time. And this is all on the record. He was surrounded and confronted by Commissioner Hastie and Commissioner Williams and a swarm of city employees. And they complained about Nathan Rennie. Nathan Rennie's post the night before. This is where Dean Duran, one of the employees, says, get that Nathan Rennie guy down here. And Williams and Hastie complained bitterly. And it's all on tape. So we got a full record. It's all on tape. They complain about how he's constantly attacking them, how Nathan Rennie is constantly attacking them on Facebook. And James, he's one of your supporters. You need to do something about that. Okay? Mr. Williams even said to a third party, this is in the record too, if I ever lose my office, I'm going to put Nathan Rennie in the hospital. A joke. Not too funny to me. But, I mean, it was suggested that it was not serious. So maybe you have a factual dispute there. Okay? But here's the overall issue. Okay, you want to say that you still have some facts supporting the ban? To answer Judge Shepard, there are plenty of protections for people who are actually out of line. There's plenty of protections. You just can't use those as a subterfuge to let out your animus towards a political opponent. And that really is the primary factual issue in this case. The evidence, frankly, is not all that close. But so I think the issues that you have to decide today are, number one, first of all, what do you really have jurisdiction to hear today? This argument today has been primarily about what the facts say. I heard Mr. Heigl talk about the facts and about, well, the judge is wrong in saying that we didn't have advice of counsel. The facts are totally in dispute. You've got to determine jurisdiction. You've got to determine whether the order is sufficient in terms of specificity, I suppose, as to whether or not there are actually material facts identified. I think they clearly are. Is this absolute legislative immunity? It absolutely is not. And is there any reason on an interlocutory appeal you should jump in and make a ruling on punitive damages? And I think the answer to that is no. Thank you. I see no additional questions. Counsel, your rebuttal? Actually, you've got more. I do. I have a little bit of time, Your Honor. I want to really quickly get right to the point. From counsel's argument, there are no disputed facts that the resolution provided the commission authority to issue the ban, and they are not challenging that that gave them authority to take action. That action was taken in a vote. One commissioner couldn't issue a ban pursuant to the resolution. They were the legislative body that were responsible for protecting their employees and protecting public safety. To the question about whether qualified immunity applies, it is undisputed, and there are no material disputed facts that Mr. McEvoy, the county attorney, advised there was existing authority under the resolution to ban individuals from county property. He gave the advice that that was. Now, whether Mr. McEvoy went and did his own investigation or said there is no dispute, and I just heard counsel say it, what Mr. McEvoy gave the commission advice on is, if you have the facts that support it, you can do it. And it is undisputed that county employees, Lisa Russell, Donna Scheider, Mike Lloyd, came to the commission, said they felt threatened by Nathan Rennie, they felt harassed by Nathan Rennie, and Mike Lloyd specifically, and it's undisputed in the record, went to the county commission and said, I demand you provide me with a safe work environment. Qualified immunity applies because no reasonable official in Mr. Williams or Mr. Hastie's position would have understood that voting to issue a ban after consulting with your counsel, pursuant to a resolution, would violate a clearly established constitutional right. And the district court erred in denying Mr. Williams and Mr. Hastie qualified immunity, and we would ask that this court reverse. Thank you, Ms. Stewart. Thank you. I believe that concludes the argument. I want to thank all counsel for participation in the case before us today. We'll continue to study the matter and render a decision in due course.